IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FLORENCE HICKS,  )
                 )
         Plaintiff,  )
                 )
     v.          )   No.   03 C 9215
                 )
MEDLINE INDUSTRIES, INC.,  )
                 )
         Defendant.  )

## MEMORANDUM OPINION AND ORDER

Florence Hicks ("Hicks") has sued Medline Industries, Inc. ("Medline"), asserting both federal and state law claims--in the first category, charges of racial discrimination and retaliatory discharge in violation of Title VII of the Civil Rights Act ("Title VII," 42 U.S.C. §§2000e to 2000e-17), and in the second category, charges of tortious interference with business expectancy and defamation. Medline has moved for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 with respect to all of Hicks' claims. For the reasons stated in this opinion, Medline's Rule 56 motion is granted, and this action is dismissed in its entirety.

## Summary Judgment Standards

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor

(Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate an issue of triable fact" (id.). Ultimately summary judgment is appropriate only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

This District Court's LR 56.1 implements Rule 56 by requiring the parties to submit evidentiary statements and responses to such statements to highlight which facts are in dispute and which are agreed upon.[1] When Medline filed its Rule 56 motion, this Court followed its invariable practice where pro se litigants such as Hicks are involved: It wrote her the attached detailed letter explaining both Rule 56 and LR 56.1, accompanied by copies of those rules.[2]

Despite the clarity of this Court's letter and its enclosures, what Hicks then tendered failed to comply with the LR

---

[1] Medline's LR 56.1 statement will be cited here as "M. St. ¶--," while its legal memorandum will be cited as "M. Mem." Hicks' LR 56.1 statement will cited as "H. St. ¶--."

[2] As called for by LR 56.2, Medline also served Hicks with a similar notice.

2

56.1 ground rules.[3] There are just four instances in Hicks' LR 56.1(b)(3) response where she simply agrees that the facts adduced by Medline are undisputed. But the remaining 133 denials in Hicks' submission (and her 300 accompanying exhibits) fail to adhere in any meaningful way to LR 56.1. Instead of providing "a response to each numbered paragraph in [Medline's] statement, including, in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting material relied upon," Hicks has proffered a motley assortment of purported refutations that (1) lack citations to the record or (2) include citations but are either unsupported by those citations or are "supported" by inadmissible evidence or (3) are entirely conclusory or (4) dispute a matter not at issue. For example, no less than 49 times in her submission does Hicks purport to refute Medline's statements by simply asserting that the claims made in those statements are "pretext for discrimination," "bogus" or "a sham to cover [Medline's] true discriminatory intent" (see H. St. ¶¶7, 12-15, 18, 31, 33-39, 44, 50-58, 61, 64, 75-76, 78-81, 85, 91-93, 95-99, 100-105, 108 and 132).[4]

---

[3] In addition, Hicks never submitted a "supporting memorandum of law" required under LR 56.1(b)(2).

[4] That laundry list of improper LR 56.1 responses is not exhaustive. Although the four categories listed above make up the bulk of Hicks' LR 56.1(b)(3) submission, there are additional errors. For example, there are instances where Hicks attempts to parry Medline's assertions--at least in part--by simply

3

Although pro se plaintiffs' pleadings are to be liberally construed (Haines v. Kerner, 404 U.S. 519, 520 (1973) (per curiam)), Hicks' nonresponses simply will not do. As Greer v. Bd. of Educ. of City of Chicago, 267 F.3d 723, 727 (7th Cir. 2001) (internal quotation marks and citation omitted) elaborates on that principle:

> The essence of liberal construction is to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable. However, a lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes.

Consistently with LR 56.1(b)(3)(C), our Court of Appeals has repeatedly held that factual assertions that are inadequately contested are deemed admitted (see, e.g., Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003)). Following that dictate, and in light of Hicks' utter failure to challenge Medline's statement of facts in any responsible fashion, this opinion will proceed on the basis of the facts as presented by Medline.

## Background

Medline is a manufacturer and distributer of health-care supplies and services (M. St. ¶2). It employs approximately

---

incorporating her 137 responses (see id. ¶¶13, 14, 16, 22, 26, 36-38, 41, 47, 52, 61, 64-65, 72, 75-77, 108) or by asserting, without any support, that Medline created the documents on which it relies after the fact to paper over its discriminatory practices (see id. ¶¶37, 49, 52-55, 57, 64, 67, 77-81, 91, 100-05).

4

4,100 employees nationwide (id.).

In 1999 Hicks was hired by Medline to work as a "Cash Applications Clerk" (M. St. ¶1). Although Hicks' performance was "generally acceptable" for the period following her hire, in the spring of 2001 it began to deteriorate (id. ¶13). First, she failed to punch in and out as required by Medline policy on 12 separate occasions, and on June 18, 2001 Hicks' supervisor Paula Stubbs ("Stubbs") issued a written warning to Hicks for that type of infraction (id. ¶¶10, 19). Second, on July 27 Hicks was again reprimanded, this time for abusing her telephone privileges by making 12 hours of personal calls during that month (id. ¶20).

Despite those disciplinary problems, Hicks decided to apply for two promotions in August 2001. On August 23 she submitted applications for the position of "Buyer/Planner," and seven days later she applied for the position of "Assistant Buyer." Because she was applying for internal positions, Hicks was required to submit "Job Bid Forms" in lieu of a typical application. Those forms expressly stated that "to be considered for an open position, your record must be clear of any disciplinary warnings in the last 90 days" (M. St. ¶72). Hicks was determined to be ineligible for both the "Buyer/Planner" and "Assistant Buyer" positions because of the written warning she had received on July

5

27 (id. ¶¶75, 79).[5] Human Resources Manager Siggy Letheby notified Hicks that she was not selected for either position in September 2001 (id. ¶¶77, 81).

After she learned that she had not been promoted, Hicks approached Stubbs, saying that she felt she had been discriminated against (M. St. ¶109). Hicks did not specifically identify race as the basis for the claimed discrimination, nor did she specify who had been, or what actions were, discriminatory (id. ¶110).

Consistently with Stubbs' understanding of Medline policy, Stubbs directed Hicks to take her concerns to Vice President of Human Resources Joe Becker ("Becker")(M. St. ¶114). Hicks did just that. On October 4, 2001 she e-mailed Becker "raising questions regarding possibilities for promotion in the future" (id. ¶115). One week later the two met to discuss the subject (id. ¶116). At no time did Hicks inform Becker that she felt that Medline had discriminated against her on the basis of race or any other reason (id. ¶¶117, 118). Moreover, Hicks never communicated with Becker again after that meeting (id. ¶119).

Despite her desire to be promoted (and her belief that she was entitled to a promotion), Hicks' performance further

---

[5] Moreover, Hicks did not have many of the qualifications required for those positions, including a college degree, purchasing experience and knowledge of the specialized computer programs that Medline uses (id. ¶¶90, 102, 103).

6

deteriorated. In March 2002[6] Stubbs gave her a written warning for failing to properly process credit card payments (M. St. ¶21). Another written warning was issued in July, again for her continued failure to follow proper procedures regarding credit card payments as well as her repeated tardiness, check-posting errors and generally uncooperative behavior toward her co-workers (id. ¶22).

As the number of check-posting errors Hicks committed multiplied, so too did the disciplinary warnings. In August Hicks received three warnings--one oral and two written (M. St. ¶¶26, 27, 30). Those warnings related to her check-posting errors, her failure to follow proper check-posting procedures, including her failure to properly read and leave notes for others after posting checks, and her inability to balance a customer's account (id.).

As a result of the growing number of errors in Hicks' work, on August 20 Stubbs placed Hicks on probation (M. St. ¶41). Stubbs told Hicks that the probationary period would last 90 days and that any further errors committed during that time period could lead to additional disciplinary action, including termination (id. 42). Stubbs gave Hicks an "Employee Discussion/Termination Form" that explained the bases for Hicks'

---

[6] Because all other events to and including Hicks' firing also occurred during 2002, no further year references will be made to such events.

probation (M. Ex. 17).

At the same time Stubbs told Hicks that her immediate supervisor Rosie Nava ("Nava") would be made available to her for one-on-one training on Medline's check-posting processes and procedures (M. St. ¶43). But Hicks was not interested in any additional training. Instead, when Nava tried to help her with a check that she was having trouble posting on August 29, Hicks refused Nava's offer of assistance and let the error stand (id. ¶46). Hicks made two more such errors during the first week of September (id. ¶39).

Check-posting errors were not the only problems that Hicks posed during her probationary period. On September 3 Hicks left work two hours early without permission (M. St. ¶50). On the same day Hicks misplaced her identification card and failed to inform Nava in a timely fashion that she had done so, in contravention of Medline policy (id. ¶¶53-54).

Three days later, on September 6, Stubbs discharged Hicks (M. St. ¶56). Stubbs based the discharge on four factors. First, Stubbs found Hicks' number of check-posting errors unacceptably high (id.). Between January 3 and September 6 Hicks committed 32 check-posting errors (id. ¶32)--more than double the number of check-posting errors Hicks committed during 2001, and more than the number of errors committed by anyone else in her department or in her position (id. ¶¶33, 36, 37). Indeed, Stubbs

8

considered even one error per month to be excessive for someone with Hicks' experience (id. ¶35). Second, Stubbs relied in part on Hicks' failure to follow Medline's check-posting and other policies and procedures (id. ¶56). Third, Stubbs found that Hicks was uncooperative, confrontational and combative with co-workers and supervisors, even after she was placed on probation and notified of that problem (id.). Fourth, Stubbs took Hicks' disciplinary history into account (id.).

After Hicks was fired she applied for a job at Target (M. St. ¶121). She does not know exactly when she applied for the job, although she believes that it was sometime in early 2003 (id. 122; H. Dep. 235). Hicks stated that the person with whom she interviewed with was named "Scott," but she cannot remember his last name (M. St. ¶123). Scott assertedly told Hicks that she would be hired at Target as long as she received a positive reference from Medline (id. ¶124). Hicks was not hired by Target (H. Dep. 235), but neither anyone in Medline's Human Resources Department nor either Stubbs or Nava was ever contacted about Hicks' prospective employment (M. St. ¶135).

On February 13, 2003 Hicks filed concurrent race discrimination charges with Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights. After receiving an EEOC right-to-sue letter on September 23, 2003, Hicks timely filed this action.

9

## Failure To Promote

Hicks' Complaint first alleges that Medline discriminated against her when it denied her promotions. That claim, as Medline correctly notes, is barred by Title VII's 300-day limitation period. As Beamon v. Marshall & Isley Trust Co., 411 F.3d 854, 860 (7th Cir. 2005) explains:

> For purposes of this statute of limitations, discrete discriminatory employment actions such as termination, failure to promote, denial of a transfer, or refusal to hire are deemed to have been taken on the date they occurred, even if they form part of an ongoing practice or are connected with other acts.

Here Hicks was notified that she would not be promoted to either the Buyer/Planner or Assistant Buyer positions in September 2001. In October of that same year Hicks discussed the matter with Becker. Yet she did not file her EEOC charge until February 13, 2003, more than a year later. Because Hicks offers no basis for equitable tolling of the 300-day limitation, her failure-to-promote claims are dismissed.[7]

## Retaliatory Discharge

Hicks additionally claims that she was unlawfully discharged in retaliation for her voicing complaints about Medline's

---

[7] Even if that were not so, Hicks could not make out a prima facie case for failure to promote because, as the record makes plain, Hicks was not qualified for either the Buyer/Planner or Assistant Buyer position (see, e.g., Maarouf v. Walker Mfg. Co., 210 F.3d 750, 753 (7th Cir. 2000)): Not only did she have a disciplinary warning in her record less than 90 days before her applications, but she also lacked nearly all of the required qualifications for either position.

10

discriminatory promoting practices.[8] Because she is armed only with circumstantial evidence, to prove such a Title VII violation Hicks must proceed under the familiar indirect method of proof prescribed by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). As Whittaker v. N. Ill. Univ., 424 F.3d 640, 647 (7th Cir. 2005)(internal quotation marks and citation omitted) teaches:

> To establish a claim of retaliation under the indirect method of McDonnell Douglas, a plaintiff must establish that (1) after lodging a complaint about discrimination, (2) only he, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) he was performing his job in a satisfactory manner. Thereafter, the familiar burden-shifting approach again takes hold, requiring the defendant to come up with a noninvidious reason for the adverse action; [o]therwise there must be a trial.

But if Medline identifies such a "noninvidious reason"--as it has surely done here--Hicks would have to show that Medline's proffered reasons are mere pretext (see, e.g., Mannie v. Potter,

---

[8] Medline's supporting memorandum stated that Hicks did not set forth evidence sufficient to create a genuine factual issue as to any claim of either retaliatory discharge or unlawful discharge on the basis of race, going on to say that its discussion on the latter subject was done only "in an abundance of caution" (M. Mem. 2 n.1). Medline is entirely right in asserting that Hicks never advanced a claim for racially discriminatory discharge: In her First Amended Complaint Hicks set out claims of (1) disparate treatment, (2) retaliatory discharge, (3) tortious interference with business expectancy and (4) defamation. None of those counts (or the facts incorporated therein) provided any basis for a racially discriminatory discharge claim. Indeed, Hicks' only relevant count charged disparate treatment, and that focused solely on Hicks' failure to receive promotions.

11

394 F.3d 977, 984 (7th Cir. 2005)).

Here, however, Hicks never reaches that final stage, for she cannot clear the prima facie hurdle to begin with. Even if it were to be assumed that Hicks lodged a complaint about discrimination (something that is not clear from the record), she has identified no similarly-situated and more favorably treated non-complaining employee, nor has she demonstrated that she was satisfactorily performing her job. Either such failure would be fatal--together they are doubly damning.

As for the first of those failings, a determination that two employees are similarly situated "entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them" (Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000) (citations omitted)). Nowhere in her mangled LR 56.1 statement does Hicks ever identify any non-complaining employee having the same disciplinary problems (let alone having the same supervisor) who was still retained by Medline.[9]

As if Hicks' failure to identify a similarly situated employee were not enough (and it is--see Bio v. Fed. Express

---

[9] It will again be recalled that Hicks never submitted a memorandum, in which such an identification might have been made.

Corp., 424 F.3d 593, 596-98 (7th Cir. 2005)), all of the evidence shows that she was not performing her job to Medline's legitimate expectations when she was fired. This opinion has already recited Hicks' serious deficiencies in performance. Moreover, she was combative and often difficult to work with throughout her Medline employment. Those undisputed facts unequivocally demonstrate that Hicks' work performance was unsatisfactory (see, e.g., Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004)).

And the very same facts also highlight the absence of even a hint of pretext in the record.[10] On that score Hicks repeatedly advances this kind of argument in her LR 56.1 statement (see, e.g., H. St. ¶34):

> The alleged errors were pretext designed to hide the true retaliatory and racially charged motive and intent of the defendants to unlawfully discriminate against the plaintiff.

But those ipse dixits cannot counter the uncontroverted evidence that Medline presents about Hicks' performance deficits, disciplinary record and difficult demeanor. Although Hicks may believe that she was properly performing all duties requested of

---

[10] This Court, like our Court of Appeals, has repeatedly made clear that the analysis of whether an employer's actions were pretextual often overlaps with any examination of whether the employee's performance was meeting that employer's legitimate expectations (see, e.g., Gordon v. United Airlines, Inc., 246 F.3d 878, 886 (7th Cir. 2001))--something that can justify moving directly to the pretext issue, rather than resorting to the McDonnell Douglas ping pong approach.

her, "[a]n employee's self-evaluation cannot create an issue of fact about an employer's honest assessment of inadequate performance" (Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 980 (7th Cir. 2004)).

In sum, Hicks' claim for retaliatory discharge is without merit. It too is dismissed.

### Interference with Business Expectancy

In addition to her federal claims, Hicks has charged that Medline tortiously interfered with her reasonable business expectancy of securing employment at Target. To state a claim for intentional interference with prospective economic advantage, a plaintiff must show[11] (Anderson v. Vanden Dorpel, 172 Ill.2d 399, 406-07, 667 N.E.2d 1296, 1299 (1996)):

> (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.

Hicks again falls far short of demonstrating the necessary material factual issue, let alone making out her claim. To begin

---

[11] As this Court has done throughout this opinion, it employs such terms as "show" and "prove" because those are employed in the caselaw establishing the substantive requirements for Hicks' claims. In the summary judgment context, of course, Hicks need not "show" or "prove" anything--all she needs to do is to create a genuine issue of fact as to one or more of the required elements of a claim. That is the standard this opinion has applied throughout--and it is the standard Hicks has failed to meet throughout (in this section as elsewhere).

with, even when Hicks' statement that Target conditionally offered her a job is credited to give her the maximum benefit of any doubt, she has provided no evidence whatever that Medline knew of or intentionally interfered with that expectancy. To the contrary, Medline's undisputed submissions negate its receipt of any inquiry from Target requesting a reference for Hicks.[12]

But suppose all of that were to be ignored--suppose that instead of the required reasonable inferences being drawn in Hicks' favor, this Court were to look only at Target's conditional offer and Hicks' not getting a job there and to connect those dots by the unreasonable inference that despite Medline's sworn statements it did hear from Target and provided it with a response that led to Hicks' lack of success in landing employment (a real quantum leap). Even on that unwarranted set of premises, which are posed here solely to underscore the emptiness of Hicks' claim, Illinois statutory law would still insulate Medline against liability (see 745 ILCS 46/10).

In sum, this added claim by Hicks fails on more than one independent front. Again Medline is entitled to prevail via

---

[12] Moreover, Medline also presented undisputed evidence that pursuant to its company policy, when an employer calls Medline for a reference regarding a former Medline employee, Medline only verifies information regarding (1) the former employee's dates of service and (2) the positions that the former employee held at the company (M. St. ¶133). Medline does not provide an inquiring prospective employer with the reason for the former employee's separation from Medline (id. ¶134).

summary judgment.

## Defamation

It should come as no surprise that Hicks' final claim of defamation also succumbs on summary judgment. Popko v. Cont'l Cas. Co., 355 Ill.App.3d 257, 261, 823 N.E.2d 184, 188 (1st Dist. 2005) sets out the hurdles Hicks must surmount:

> To prove defamation, a plaintiff must show that the defendant made a false statement about the plaintiff, there was an unprivileged publication to a third party by the defendant, and the publication damaged the plaintiff.

Here Hicks must substitute fancy for fact--an impermissible approach to the real world of summary judgment. There is no justification whatever for the sheer speculation that would be needed to keep Hicks in court on this final claim. No <u>evidence</u> has been adduced that Medline made any statement about Hicks to Target, or as to the content of the hypothetical statement or as to the individual who might have made it (or, indeed, as to the individual to whom any such statement might have been made[13]).

Once more Hicks has failed. Summary judgment rejecting her defamation claim is warranted as well.

---

[13] Nor can Hicks seek to rely on any notion that Medline's people closed ranks against her by falsifying their sworn testimony. Despite her multivolume submissions in opposition to Medline's motion, she has proffered nothing from nonparty Target to support her speculations.

16

## Conclusion

This case has come to a close with all of Hicks' contentions having come undone. Because she has failed to establish the existence of a genuine issue of material fact on any of her claims, Medline is entitled to a judgment as a matter of law. This entire action is dismissed with prejudice.

                                                Milton I. Shadur
                                                Senior United States District Judge

Date: June 2, 2006